# Boulware *v.* Davis.

*Bill in Equity for Foreclosure of Mortgage.*

1. *Contract of foreign corporation; burden of proof as to validity.*—In a bill to foreclose a mortgage, filed by a foreign corporation, or its receiver, it is not necessary to aver or show affirmatively that the corporation has capacity to make the contract, the presumption being in favor of its validity, and the *onus* of showing its invalidity being on the party who assails it.

2. *Foreign receivers; right to sue here.*—The general principle is well established, that a receiver can not, as matter of right, maintain a suit outside of the jurisdiction of the court which appointed him; but it is equally well established, as an exception to this rule, that he may maintain a suit in another jurisdiction, on grounds of comity, when not contrary to the policy of that jurisdiction, nor injurious to the rights

[Boulware v. Davis.]

of its own citizens; and when it appears, as in this case, that the receiver of a foreign insolvent corporation is proceeding, eight years after his appointment, to foreclose a mortgage executed to the corporation ten years before its insolvency, and it does not appear that any domestic creditors are complaining, the suit will be allowed to proceed as against the mortgagors.

3.  *Foreign insurance companies; contracts made by agent in Alabama, without compliance with statutory provisions.*—Under statutory provisions of force in 1872, and which are yet of force in substance (Rev. Code, 1867, § 1180; Code, 1886, § 1209), the agent of a foreign insurance company was prohibited to "transact any business of insurance in this State," without first procuring a proper certificate from the State Auditor, showing his compliance with the prescribed conditions; but the prohibition and the penalty were directed against the agent personally, and not against the company represented by him, and did not prohibit the transaction of business generally; and when a foreign insurance company, or its receiver under appointment of a court of competent jurisdiction, seeks by bill to foreclose a mortgage executed in Alabama, in 1872, as security for a debt, it is not necessary to aver a compliance with these statutory provisions, nor to negative the fact that the note and mortgage were taken in the transaction of any business of insurance.

APPEAL from the Chancery Court of Madisòn.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 30th January, 1888, by Aubin L. Boulware, as receiver, appointed by a court of competent jurisdiction in Virginia, of the property and assets of the Piedmont and Arlington Life Insurance Company, of Richmond, Virginia, an insolvent corporation; against Mrs. Sophia L. Davis, individually and as administratrix of the estate of her deceased husband, Nicholas Davis, and their children; and sought to foreclose a mortgage on a tract of land in Huntsville, which was executed by said Davis and wife, in 1872, as security for the payment of their bond, or promissory note under seal, for $1,646.14, of even date with the mortgage, and payable five years after date, to the order of said insurance company. The note, which was copied in the bill, purported to be given "for value received," but its consideration was not otherwise stated. The bill alleged that the said insurance company was regularly incorporated under the laws of Virginia, in 1869, and became insolvent in November, 1880; that complainant was appointed, in December, 1880, by the United States Circuit Court for the Eastern District of Virginia, receiver of the assets and property of said insolvent corporation, with power, among other things, "to prosecute and defend all existing actions by or against said company, and to use the name of said company, or his own name as receiver, in the prosecution of such actions as he may find it necessary or proper to bring, maintain or defend, for the recovery or defense of the estate and assets of said company;" and that said note and mortgage came to his

hands as part of the assets of said insolvent corporation. An amended bill was afterwards filed, alleging that the property conveyed by the mortgage was conveyed by deed or declaration of trust, by said Nich. Davis, to his wife, in June, 1860, for the benefit of herself and children, with power to him to sell and re-invest; "that the consideration expressed in said mortgage was obtained and used for the benefit of said *cestuis que trust*, and that the property or interest conveyed by said deed to Mrs. Sophia Davis is her equitable separate estate, and one which she could mortgage."

A demurrer was filed to the bill, assigning several grounds, of which the chancellor sustained the following : (1) because it does not show that the charter of said corporation conferred on it the right or power to lend money and take mortgages; (2) because it shows that complainant was appointed as receiver by a court in Virginia, and said court had no power or jurisdiction to authorize him to sue in Alabama; (3) because it does not show that said corporation, before or after the date of said mortgage, complied with the statutory provisions (Rev. Code, § 1180) then of force. The chancellor sustained the demurrer on these grounds, and his decree is here assigned as error. Other grounds of demurrer were assigned, but they require no notice.

HUMES, WALKER & SHEFFEY, for appellant,—(1.) The general rule is not denied, that a receiver can not, as matter of strict right, maintain a suit outside of the jurisdiction of the court which appointed him; but the rule is intended to protect the rights of domestic creditors and citizens, and he willl be allowed to sue, as matter of comity, where their interests are not involved.—High on Receivers, 158, § 241; Beach on Receivers, §§ 17–19, 85, 682; Jones on R. R. Securities, § 491; 6 Amer. St. Rep. 185; Foster's Fed. Practice, § 34; *Hurd v. Elizabeth*, 41 N. J. Law, 1; *Bank v. McLeod*, 38 Ohio St. 174. Here, it does not appear that there are any Alabama creditors; if any ever existed, it must be presumed that their claims have been paid, or that they have been presented to the foreign court for allowance, or that they are barred, since more than ten years have elapsed; and the debtor can not invoke the general rule, to evade the payment of an admitted debt. (2.) The bill simply shows a debt owing to the corporation, and security given for it, and does not show that the note was given for money lent. The note imports a consideration, and the presumption is in favor of its validity; and the right to take security for its legal debts is implied or incidental to every corporation, unless expressly prohibited.—*Oxford Iron*

[Boulware v. Davis.]

*Co. v. Spradley*, 46 Ala. 93; *Life Insurance Co. v. C. & A. M. Asso.*, 54 Ala. 73. (3.) No constitutional provision prohibited the contract here sought to be enforced, at the time it was entered into, and no subsequent provision can impair or affect its validity. The statutory provisions were directed against the agents of foreign insurance companies, and required them to take out a license; but the contracts of the companies were not declared void; nor does the bill show that the contract here involved was made in the transaction of any insurance business.

D. D. SHELBY, *contra.*—(1.) The powers of a receiver are co-extensive only with the jurisdiction of the court by which he was appointed, and he can not maintain a suit in another jurisdiction.—Rorer on Inter-State Law, 295; Beach on Receivers, § 680–81; High on Receivers, 156, § 239–44; Kerr on Receivers, 168, note, and 206; Edwards on Receivers, 80; *Booth v. Clark*, 17 How. 322; *Day v. Telegraph Co.*, 66 Md. 360; *Hunt v. Insurance Co.*, 55 Me. 290; *Harvey v. Harvey*, 104 Mass. 436; Wait on Insolvent Corporations, § 234; 19 Fed. Rep. 471; 12 Blatch. 237; *Insurance Co. v. Taylor*, 2 Rob. N. Y. 278; 11 Fed. Rep. 535; *Mosby v. Burrow*, 52 Texas, 396; *Grayson v Church*, 7 Mich. 36; 52 Mo. 17; 7 Phila. 156; *Bartlett v. Wilbur*, 53 Mo. 485; 66 N. C. 252. Some exceptional cases are to be found, in which a foreign receiver has been allowed to sue, on principles of comity; but these will be found, on examination, to depend on particular circumstances; as in *Bedlock v Mason*, 11 C. E. Green, 230. If the rule is to be maintained in its integrity, the facts of this case require its application here, where the receiver of an insolvent foreign corporation, after an unexplained delay of ten years, and long after the death of the debtor himself, is seeking the condemnation of property held in trust for a married woman and her children, and the removal of the proceeds of sale into a foreign jurisdiction. (2.) It is to be assumed that the mortgage was taken by the corporation in the transaction of its legitimate business, that is, the business of insurance; otherwise it is *ultra vires*, and void. But a foreign corporation is not allowed to transact any business of insurance in Alabama without a compliance with certain statutory regulations, which the State had a right to impose—Rev. Code, 1867, § 1180; 67 Ala. 26; 87 Ala. 431; 8 Gray, 206; 11 Wisc. 394; 42 N. H. 547; 58 Ala. 476. Claiming or asking the right to sue here, the corporation should at least show a compliance with these statutory provisions. (3.) On its face the mortgage appears to have been taken only as security for

[Boulware v. Davis.]

a debt, and is not a valid execution of the power retained in the declaration of trust under which the property was held. *Buford v. McCormick*, 57 Ala. 428; *Matthews v. McDade*, 72 Ala. 881.

CLOPTON, J.—Appellant, who was appointed receiver of the Piedmont and Arlington Life Insurance Company, by the Circuit Court of the United States for the Eastern District of Virginia, seeks by the bill the forecloseure of a mortgage on real property situated in this State, executed to the company, July 29, 1872, by Sophia L. Davis and Nicholas Davis, to secure the payment of a bond made by them on the same day for the sum of $1,646.14, payable five years after date. The appeal is taken from a decree of the chancellor sustaining three of the several grounds of demurrer interposed by defendants. We shall consider them in the order assigned for error.

1. The assignment of demurrer, first in order, relates to the want of averments showing that the power to loan money and take mortgages was conferred on the corporation by the charter, and is based on an exercise of power not appearing from the allegations of the bill. It merely sets forth copies of the bond and mortgage, and avers the execution of both, without stating the consideration for which the bond was given. The bond is evidence of the debt, and that it was made on a valuable consideration. The bill avers, that the company was incorporated under the laws of Virginia, but does not set out its charter, or its purposes and objects, except as they may be inferred from the name of the corporation. As the bill does not affirmatively disclose that the contract is *ultra vires*, in order to sustain this ground of demurrer, the court must presume, not only a want of express power, but also that the contract was not necessary and proper to accomplish the purposes of the creation of the corporation—a want of incidental power. *Prima facie* the contracts of a corporation are valid; there is no presumption of excess of power attaching to them, and the burden of showing they should be avoided is on the impeaching party. The bill is not subject to demurrer, for failing to show affirmatively the capacity of the corporation to make the contract. *Ala. Gold Life Ins. Co. v. Cen. Agr. & Mech. Asso.*, 54 Ala. 73.

2. The second assignment is, that the court appointing the receiver had no jurisdiction or power to authorize him to sue in the courts of this State. The demurrer admits that complainant was duly appointed by a court of competent juris-

[Boulware v. Davis.]

diction, and, as such, has possession of the bond and mortgage. By the order of appointment, he is clothed with authority to bring suits, whenever necessary or proper, for the recovery of the assets and property of the corporation. Its language is, "to use the name of the company, or his own name as receiver, in the prosecution of all such actions as he may find it necessary to bring, maintain or defend, for the recovery or defense of the estate of which he is appointed receiver." Unquestionably, the great weight of authority maintains the doctrine, that the powers of a receiver are co-extensive only with the jurisdiction of the court from which he obtains his appointment; his functions and powers in respect to litigation are limited to the courts of the State of his appointment; and he can not, as a matter of right, institute suits in the courts of another State, for the recovery of *choses* in action, or property of the corporation or individual, whose estate is subject to his receivership.—High on Receivers, § 239. This rule was emphatically declared in *Booth v. Clark*, 17 How. 322, where it is said: "He has no extra-territorial power of official action; none which the court appointing him can confer with authority to enable him to go into a foreign jurisdiction to take possession of the debtor's property; none which can give him, upon the principles of comity, a privilege to sue in a foreign court, or another jurisdiction, as the judgment-creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek." The rule, that a receiver has no right to sue in the courts of another State, has not, and can not be seriously questioned.

But, while the courts have with great unanimity denied the capacity of a receiver to bring suits in foreign jurisdictions as a question of *right*, the rigor of the rule has been much relaxed, and the privilege or permission to sue is ordinarily accorded as matter of comity—not as obligatory, but a favor or courtesy which may be extended or withheld. In the absence of statutory regulations, the appointment and title of a receiver may be recognized, and he may sue in the courts of another State, unless such suit works injustice or detriment to the citizens thereof, or contravenes the policy of its laws.—*Pugh v. Hurt*, 52 How. Pr. R. 22; *Chandler v. Siddle*, 3 Dill. 477. In *Hurd v. City of Elizabeth*, 41 N. J. L. 1, Beasley, C. J. says: "Conceding that the officer is invested with this fullness of authority (to collect the assets at home and abroad), it would appear to be in harmony with those legal principles by which the intercourse of foreign States is regulated, for every government, when its tribunals are appealed to, to render every assistance in their power in furtherance of the execution of

such authority, except in those cases when, so doing, its own policy would be displaced, or the rights of its own citizens invaded or impaired. After completely protecting its own citizens and laws, the dictates of international comity would seem to require, that the officer of the foreign tribunal should be acknowledged and aided." And in 6 Amer. St. Rep. 189, the learned annotator, after reviewing the foreign authorities, remarks: "We deduce therefore, from a thorough examination and text-books on the subject, that the great weight of authority is, and should be, in keeping with the decision rendered by Mr. Justice Wayne in *Booth v. Clark, supra,* that a foreign receiver has no right to sue in another State, but that, on the ground of comity, the court will, in the just and proper exercise of a sound legal discretion, permit such suits to be maintained for the purpose of thereby doing justice, where the good of a larger number would demand it, by recognizing the orders and judgments of the courts of a sister State. But in none of the cases is such right to sue conceded, or the right permitted to be maintained by the foreign receiver, where the claims sought to be enforced conflict with the rights of citizens or creditors in the State where the suit is brought." The exception to the rule denying a receiver the right to bring suits in foreign jurisdictions, it has been said, may be regarded quite as firmly established as the rule itself, and that the constant tendency of the courts is towards a more enlarged and liberal policy.—High on Receivers, § 242; Beach on Receivers, § 682.

The corporation became insolvent, and the receiver was appointed in 1880. The bill was filed January 20, 1888. During this long period of time, the creditors, if there are any in this State, have had ample opportunity to assert their rights, and to institute proceedings to have the property located in this State subjected to their demands by its courts. No creditor having appeared, or asserted any rights, it may be reasonably presumed that there are none, or, if any, they have preferred to assert their claims to the court appointing the receiver, rather than waste the estate by the costs and expenses of multiplied litigation and different receiverships. When no creditor is complaining, or asserting rights after the lapse of so long a time—when only the parties litigant are interested, and the purpose of the suit is to gather the assets of the insolvent corporation, in order to render them available for equal distribution among the creditors in one proceeding—we can see no reasonable objection against allowing the foreign receiver to sue.

3. The third ground of demurrer is, that it does not appear from the bill that the corporation had, before or at the time of

making the contract, complied with the requirements of section 1180 of the Revised Code, corresponding with section 1209 of Code of 1887. The statute provides, that no agent of any foreign fire, river, marine, or life insurance company shall, directly or indirectly, take any risk, or transact any business of insurance in this State, without first procuring a certificate of authority from the Auditor, and declares the violation of the provisions of the statute a misdemeanor. The prohibition is directed to, and the penalties of a violation are visited upon the agent. The statute prohibits taking risk, or transacting business of insurance; it does not prohibit the transaction of business generally, not in the line of business of insurance. The bill does not show that the bond and mortgage were made in the course of transacting any business of insurance in this State; it simply shows a debt owing to the corporation, for which security was given. The observations made in reference to the first cause of demurrer apply also to this. The case does not fall within the principle settled in *Farrior v. New England Mortgage Sec. Co.*, 88 Ala. 275, and the subsequent cases.

Counsel for appellee, in his argument, suggests questions involving the construction of the declaration of trust, executed by Nicholas Davis several years before the making of the mortgage, the nature and extent of the right or estate of Mrs. Davis and their children, and the power of herself and husband to make a valid mortgage of the land. These are important and serious questions, which will require careful and full investigation and consideration, when properly raised; but they are not presented by the assignments of error, and could not have been.

No assignment was made to complainant as receiver by the corporation. The legal title to the land is in the company. Is not the company an indispensable party, so as to have the legal title before the court? We suggests this for the consideration of counsel.

Reversed and remanded.